UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KING MOUNTAIN TOBACCO COMPANY, INC., et al;<br><br>                        Plaintiffs,<br><br>   v.<br><br>ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, et al;<br><br>                        Defendants. | NO: CV-11-3038-RMP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Before the Court is Plaintiff's motion for partial summary judgment, ECF No. 52. The Court has reviewed the motion, the memoranda in support and opposition, the statements of fact, the affidavits and declarations of the parties, all other relevant filings, and is fully informed.

## BACKGROUND

The following facts are not in dispute. Plaintiff Confederated Tribes and Bands of the Yakama Nation ("Yakama Nation") is a federally recognized Indian tribe. ECF Nos. 54 at 2, 95 at 1. King Mountain Tobacco, Inc. ("King Mountain")

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

1  is a corporation organized, existing, and operating under the laws of the Yakama
2  Nation. ECF Nos. 54 at 2, 95 at 1. Delbert Wheeler, Sr., is an enrolled member of
3  the Yakama Nation and is the owner and operator of King Mountain. ECF Nos. 54
4  at 2, 95 at 1.

5  King Mountain's manufacturing facilities are located within the boundaries
6  of the Yakama Nation Reservation on property held in trust by the United States
7  for the beneficial use of Mr. Wheeler. ECF Nos. 54 at 2, 95 at 1. King Mountain
8  manufactures cigarettes and roll-your-own tobacco. ECF Nos. 54 at 3, 95 at 1.
9  Some of the tobacco used by King Mountain is grown on Yakama Nation trust
10  land. ECF Nos. 54 at 2, 95 at 1. The trust-land grown tobacco is then blended
11  with other tobacco to produce King Mountain products. ECF Nos. 54 at 2, 95 at 1.

12  King Mountain, Mr. Wheeler, and the Yakama Nation brought this action
13  seeking a declaration that King Mountain is not subject to payment of excise taxes
14  on tobacco products under 26 U.S.C. § 5701, an injunction restraining Defendant
15  Alcohol and Tobacco Tax and Trade Bureau ("TTB") from preventing King
16  Mountain from selling its products, and a declaration that the Yakama Nation is
17  entitled to meaningful consultation and resolution of disputes with the executive
18  branch. ECF No. 1.

19  The Defendants moved to dismiss the action based on lack of jurisdiction.
20  ECF No. 9. The Plaintiffs countered with the present motion for partial summary

judgment. ECF No. 52. The Court granted the Defendants' motion to dismiss in part and dismissed King Mountain and Mr. Wheeler from the action for lack of jurisdiction. ECF No. 83. The Court concluded, however, that it had jurisdiction to hear claims brought by the Yakama Nation. ECF No. 83. Accordingly, the Court will now proceed to address Plaintiff's motion for partial summary judgment.

## APPLICABLE LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then

shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *Dzung Chu v. Oracle Corp.* (*In re Oracle Corp. Secs. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

As citizens of the United States, enrolled members of federally recognized Indian tribes are generally liable to pay federal taxes. *See Squire v. Capoeman*, 351 U.S. 1, 6 (1956). Federal law imposes an excise tax on tobacco products to be calculated against the manufacturer at the time of the removal of the tobacco products from the manufacturer's facilities. 26 U.S.C. §§ 5701-5703.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

The Yakama Nation argues that the tobacco tax does not apply in this case for two reasons. First, the Yakama Nation argues that application of the tax violates the General Allotment Act's restriction on taxing income directly derived from Indian trust land. Second, the Yakama Nation argues that application of the tax violates the Treaty of 1855 ("Treaty") between the Yakama Nation and the United States.

**General Allotment Act**

Under the General Allotment Act, individual Indians were allotted lands on their reservations to be held in trust by the United States for the benefit of that individual Indian. *Capoeman*, 351 U.S. at 3. After twenty five years, absent extension of the trust period by the President, the land would be conveyed in fee simple to the allottee. *Id.* Important to this case is a section allowing the Secretary of the Interior to convey the land in fee simple to the allottee prior to expiration of the trust period. That section reads in relevant part:

> [T]he Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter *all restrictions as to sale, incumbrance, or taxation of said land shall be removed* and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent . . . .

25 U.S.C. § 349 (emphasis added).

In *Capoeman*, the Supreme Court held that the language "all restrictions as to . . . taxation of said land shall be removed," implied that trust land that was not yet patented in fee was not subject to taxation. 351 U.S. at 8-10. The Supreme Court noted, however, that the restriction on taxation was limited to "the trust and income derived directly therefrom." *Id.* at 9. Income that was not directly derived from trust land but was derived from earlier income from the land, known as "reinvestment income," was not exempted from taxation. *Id.* In *Capoeman*, the tax at issue was capital gains paid on the sale of timber. *Id.* at 4. The Court held that the income resulting from the sale of the timber was directly derived from the trust land and not subject to federal income tax. *Id.* at 9-10.

Cases decided after *Capoeman* have identified sources of income beyond timber that are directly derived from the land and are not taxed. *E.g., Stevens v. Comm'r of Internal Revenue*, 452 F.2d 741, 747 (9th Cir. 1971) (holding that income derived from ranching and farming operations by an allottee on his allotted land are not taxable); *United States v. Daney*, 370 F.2d 791 (10th Cir. 1996) (holding that bonuses paid to allottee for oil and gas leases to his allotment were not taxable). However, other cases also have found that some income-producing activities, despite being sited on allotted or tribal trust land, are subject to federal taxes. *E.g., Dillon v. United States*, 792 F.2d 849, 856 (9th Cir. 1986) (holding that income from a smokeshop operated on trust land was not "generated

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

principally from the use of reservation land and resources."); *Critzer v. United States*, 220 Ct. Cl. 43, 54 (1979) (holding that income generated from a motel, a restaurant, a gift shop, and from building rentals, is not directly derived from the land). The conclusion of the cases interpreting *Capoeman* is that income derived from products grown on or contained within trust land is not taxable while income from businesses that are located on trust land is taxable.

If Mr. Wheeler were simply growing tobacco on his allotment and selling that tobacco, *Capoeman* would dictate that those sales, and the income derived therefrom, would be tax free. On the other hand, if Mr. Wheeler were manufacturing tobacco products using only tobacco grown in Virginia, *Capoeman* would clearly not apply because no value was being derived directly from the land. In this case, however, King Mountain manufactures cigarettes and roll-your-own tobacco using, in part, tobacco grown on trust property within Yakama Nation borders. Accordingly, the question for the Court is whether the inclusion of trust-grown tobacco insulates King Mountain from taxation on its tobacco products.

Unlike many of the cases construing *Capoeman*, the instant case does not involve federal income tax. Instead, the tax at issue here is an excise tax on tobacco products manufactured in the United States.[1] 26 U.S.C. §§ 5701-5702; *see*

---

[1] The rule in *Capoeman* applies to federal excise taxes, *Cook v. United States*, 32 Fed. Cl. 170, 172-73 (1994).

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

*also Patton v. Brady*, 184 U. S. 608, 616-19 (1902).  Unlike federal income tax, which applies broadly to all income, the excise tax applies only to tobacco products manufactured or imported into the United States.  26 U.S.C. §§ 5701-5702.

Tobacco products are defined as cigars, cigarettes, smokeless tobacco, pipe tobacco, and roll-your-own tobacco.  § 5702(d).  The tax does not apply to the production or sale of leaf tobacco grown by farmers.  *See* §§ 5701-5703.  Accordingly, unlike federal income tax which would apply to income derived from growing tobacco, section 5701 does not tax Mr. Wheeler or King Mountain for growing tobacco.  Instead, King Mountain is taxed because it manufactured cigarettes and roll-your-own tobacco in the United States.  The fact that King Mountain included trust-land grown tobacco into its products does not change the scope of the excise tax.

The Court in *Capoeman* drew a distinction between income derived directly from trust land and income derived from previous income, which the Court called reinvestment income.  351 U.S. at 9.  Direct income was not taxable while reinvestment income was taxable.  *Id.*  Even though this case involves an excise tax instead of an income tax, the Court finds this distinction relevant.

Tobacco grown on Yakama Nation trust land is analogous to income directly derived from trust land.  It is not subject to the excise tax.  *See* § 5701.  The

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

untaxed tobacco is then blended in as part of a finished cigarette or as roll-your-own tobacco. The finished cigarettes and roll-your-own tobacco are analogous to reinvestment income as they are products derived from a product directly derived from the land. The cigarettes and roll-your-own tobacco are not directly derived from trust land for purposes of *Capoeman*, and application of the excise tax to the cigarettes and roll-your-own tobacco is permissible.

The Ninth Circuit's opinion in *Dillon* confirms the Court's conclusion. The *Dillon* court, citing to the Tax Court's opinion in *Hoptowit v. Comm'r*, 78 T.C. 137, 144 (1982), and the Court of Claims' opinion in *Critzer*, 220 Ct. Cl. 43, recognized that even where some value comes directly from trust land, the *Capoeman* rule should not apply in cases where "income was not generated principally from the use of reservation land and resources." *Dillon*, 792 F.2d at 855-56. Uncontroverted evidence was presented that approximately twenty percent of the tobacco used by King Mountain to manufacture its products is grown on trust land. ECF No. 96 at 7, and that approximately eighty percent comes from a source in North Carolina. ECF No. 96 at 7. When taking into account the manufacturing process and the amount of non-trust-land tobacco that is used in King Mountain's products, the Court finds that the cigarettes and roll-your-own tobacco produced by King Mountain are not principally generated from the use of reservation land and resources.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

In addition, the Ninth Circuit consistently has held that the tax exemption under *Capoeman* for income derived directly from trust land applies only to income derived from the allottee's own allotment. *United States v. Anderson*, 625 F.2d 910, 914 (9th Cir. 1980). For example, if an allottee earns income from cattle that graze on different allottees' trust land, such income would not be excludable from income tax. *Id.* at 912. The *Anderson* court noted that "*Capoeman*'s point was that if an Indian's allotted land (or the income directly derived from it) was taxed, and the tax was not paid, the resulting tax lien on the land would make it impossible for him to receive the land free of 'incumbrance' at the end of the trust period." *Id.* at 914. In contrast, an allottee's failure to pay taxes would not give rise to a tax lien on a different beneficiary's land. *Id.* (quoting *Holt v. Comm'r*, 364 F.2d 38, 41 (8th Cir. 1966)).

In this case, Mr. Wheeler is the allottee, but King Mountain is the tax payer. The tax lien statute applies to the property of the "person liable to pay" the unpaid tax. 26 U.S.C. § 6321. Although the Court is aware that Mr. Wheeler's assets could be subject to lien if King Mountain were found to be Mr. Wheeler's alter ego, *see G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977), the record is devoid of any evidence that King Mountain is Mr. Wheeler's alter ego. Accordingly, any lien would be imposed on King Mountain's property. As the trust property is held for the benefit of Mr. Wheeler, it is not an asset of King

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

1  Mountain.  Therefore, under the reasoning of *Anderson*, the *Capoeman* exception

2  to taxation would not apply to income earned by King Mountain.

3  **Treaty of 1855**

4  The second argument advanced by the Yakama Nation for why King

5  Mountain should not be subject to tobacco excise taxes is that King Mountain is

6  exempt from such taxes under the Treaty of 1855, 12 Stat. 951.  Article II of the

7  Treaty describes the land that was reserved to the Yakama Nation and stated that

8  the "tract shall be set apart and, so far as necessary, surveyed and marked out, *for*

9  *the exclusive use and benefit* of said confederated tribes and bands of Indians . . . ."

10 *Id.* (emphasis added).  The Yakama Nation argues that the language "for exclusive

11 use and benefit" evidences an intent by the United States to exclude certain

12 activities, including the manufacturing of tobacco products, from federal taxation.

13 As an initial matter, the parties dispute whether the Court, in determining

14 whether the treaty creates a tax exemption, is limited to the four corners of the

15 Treaty or may consider extrinsic information, including information about the

16 negotiations.  In *Ramsey v. United States*, 302 F.3d 1074 (2002), the Ninth Circuit

17 addressed the scope of this inquiry.   Kip R. Ramsey was an enrolled member of

18 the Yakama Nation.  *Id.* at 1076.  Mr. Ramsey owned a logging company and used

19 diesel trucks exceeding 55,000 pounds of gross weight to haul his lumber.  *Id.*

20 Federal law imposed a tax on trucks that exceeded 55,000 pounds.  *Id.* (citing 26

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 11

1  U.S.C. § 4481). Mr. Ramsey argued that the truck taxes were preempted by the

2  Article III of the Treaty. *Id.* Article III of the Treaty reads in pertinent part:

3  "[I]f necessary for the public convenience, roads may be run through the said reservation; and on the other hand, the right of way, with free
4  access from the same to the nearest public highway, is secured to them; as also the right, in common with citizens of the United States,
5  to travel upon all public highways."

6  *Id.* at 1076-77 (quoting 12 Stat. at 951-53).

7  Mr. Ramsey asserted that this language precluded the taxation of enrolled

8  members of the Yakama Nation for using public highways. *Id.* at 1077. As part of

9  his argument, Mr. Ramsey relied on the fact that the Ninth Circuit had held that the

10 Treaty preempted Washington law that taxed heavy vehicles. *Cree v. Flores*, 157

11 F.3d 762, 771 (9th Cir. 1998). Mr. Ramsey asserted that the holding regarding

12 Washington law applied equally to federal law. *Ramsey*, 302 F.3d at 1077.

13 The Ninth Circuit declined to extend its holding in *Cree* to preempt federal

14 taxation. The Court drew a distinction between the appropriate canons of

15 construction that applied to preemption of state law with those that applied to

16 federal law. *Id.* at 1078. When state tax law is at issue, "a court determines if

17 there is an express federal law prohibiting the tax. The federal law must be

18 interpreted in the light most favorable to the Indians, and extrinsic evidence may

19 be used to show the federal government's and Indians' intent." *Id.* at 1079.

20

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

However, where federal tax law is at issue, a court must first determine whether the treaty contains "express exemptive language." *Id.* at 1078. Only if the treaty contains express exemptive language does the court proceed to determine whether that language could be reasonably construed to support exemption from taxation. *Id.* at 1079. The question before this Court, then, is whether Article II contains express exemptive language. In making this inquiry, the Court will not consider evidence extrinsic to the Treaty itself.

The Ninth Circuit has had an opportunity to construe Article II's "exclusive use and benefit" language. In *Hoptowit v. Comm'r of Internal Revenue*, 709 F.2d 564 (9th Cir. 1983), an enrolled member of the Yakama Nation sought exemptions from federal income tax for income derived from a smoke shop operated on land within the Yakama Nation reservation and for per diem payments received for his work on the Yakama Nation Tribal Council. *Id.* at 565. He asserted that Article II's "exclusive use and benefit" language was the source of the exemption. *Id.* at 565-66.

With regard to the per diem payments, the court noted that it had previously ruled that such payments were not exempt from income tax under the reasoning of *Capoeman*. *Id.* at 566 (citing *Comm'r v. Walker*, 326 F.2d 261 (9th Cir. 1964)). In reviewing the language of Article II, the court noted that language "gives to the Tribe the exclusive use and benefit *of the land* on which the reservation is located."

1  *Id.* The court concluded that "any tax exemption created by this language is
2  limited to the income derived directly from the land." *Id.* In short, because the per
3  diem payments were not exempt under the reasoning of *Capoeman*, they were
4  similarly not exempt under any exception contained in Article II.

5      This Court already has held that King Mountain does not enjoy an
6  exemption from the federal excise tax on tobacco products under *Capoeman*
7  because the tax is not imposed on products directly derived from the land.
8  Therefore, to the degree that Article II contains express exemptive language, the
9  exemption to taxation created by Article II would not apply to the facts of this
10 case. *Id.* Accordingly, the Plaintiff has failed to establish an exemption to the
11 excise tax under the Treaty.

## CONCLUSION

13     Enrolled members of federally recognized Indian tribes, as United States
14 citizens, are subject to federal taxation unless explicitly exempted under federal
15 law or by treaty. *Fry v. United States*, 557 F.2d 646, 647 (9th Cir. 1977). King
16 Mountain is not exempt from federal excise tax on tobacco products under the
17 General Allotment Act and *Capoeman* because the excise tax does not tax products
18 directly derived from the land. Any exception to taxation that could be inferred in
19 Article II of the Treaty is similarly limited to products derived directly from the
20

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 14

land. *Hoptowit*, 709 F.2d at 566.  Therefore, the excise tax also is not precluded by the Treaty.

Accordingly, **IT IS HEREBY ORDERED:**

**1.** The Plaintiff's motion for partial summary judgment, **ECF No. 52**, is **DENIED**.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 11th day of February 2013.

                                     *s/ Rosanna Malouf Peterson*
                                  ROSANNA MALOUF PETERSON
                             Chief United States District Court Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15