# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KING MOUNTAIN TOBACCO COMPANY, INC., et al; <br><br> Plaintiffs, <br><br> v. <br><br> ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, et al; <br><br> Defendants. | NO: CV-11-3038-RMP <br><br> ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT |

Before the Court is a motion for summary judgment filed by the United States, ECF No. 134. A similar motion was filed in the related case *United States v. King Mountain Tobacco Co.*, Case No. 12-3089 at ECF No. 48. The Court heard oral argument on the motions in both cases. John Adams Moore, Jr., and Randolph Barnhouse represented the plaintiff, the Confederated Tribes and Bands of the Yakama Indian Nation. W. Carl Hankla, Trial Attorney for the Tax Division of the United States Department of Justice, represented the United States. The

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 1

1  Court has reviewed the briefing and all supporting documents presented in this
2  case and in Case No. 12-3089 and is fully informed.

## BACKGROUND

The following facts are not in dispute. Plaintiff Confederated Tribes and Bands of the Yakama Nation ("Yakama Nation") is a federally recognized Indian tribe. ECF No. 141 at 2. King Mountain Tobacco, Inc. ("King Mountain") is a corporation organized, existing, and operating under the laws of the Yakama Nation. *Id.* Delbert Wheeler, Sr., is an enrolled member of the Yakama Nation and is the owner and operator of King Mountain. *Id.*

King Mountain's manufacturing facilities are located within the boundaries of the Yakama Nation Reservation on property held in trust by the United States for the beneficial use of Mr. Wheeler. ECF No. 141 at 2. King Mountain manufactures cigarettes and roll-your-own tobacco. ECF No. 103 at 2. The parties agree that the tobacco products at issue in this case are manufactured from a blend of tobacco grown on Yakama Nation trust land and tobacco grown elsewhere on non-trust land. ECF No. 141 at 2.

The amount of tobacco used in King Mountain's products is subject to some dispute. At the time that the Court previously entered its Order Denying Plaintiff's Motion for Partial Summary Judgment, uncontroverted evidence established that approximately twenty percent of the tobacco used by King Mountain in its

manufactured products was grown on trust land. ECF No. 103 at 9. In responding to the instant motion for summary judgment, Yakama Nation asserts that King Mountain has increased the percentage of tobacco grown on trust land since 2012. ECF No. 141-1 at 3-4. Yakama Nation further asserts that as of the fourth quarter of 2013, fifty-five percent of the tobacco used in King Mountain's manufactured products is grown exclusively on trust land. *Id.*

Yakama Nation additionally asserts that King Mountain now produces "traditional use tobacco" that is "intended for Indian traditional and ceremonial use and [] consists entirely of (100 percent) tobacco grown exclusively on [trust land]." ECF No. 141-1 at 4. According to Yakama Nation, six shipments of King Mountain's "traditional use tobacco" have been subject to federal excise taxes since 2012. *Id.* However, Yakama Nation's First Amended Complaint raised only the issue of cigarettes and roll-your-own tobacco products, ECF No. 16 at 26, and did not state a claim relating to its "traditional use tobacco." In addition, the parties presented little argument related to the "traditional use tobacco" in the course of litigating this case.

King Mountain, Mr. Wheeler, and the Yakama Nation brought this action seeking a declaration that King Mountain is not subject to payment of federal excise taxes on tobacco products; a declaration that the Yakama Nation is entitled to meaningful consultation and resolution of disputes with the executive branch;

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 3

and an injunction against Defendant Alcohol and Tobacco Tax and Trade Bureau ("TTB") prohibiting TTB from preventing the sale of King Mountain's products. ECF No. 16 at 53-54. In addition, Plaintiff seeks a refund or abatement of all monies paid under the excise tax requirements. *Id.*

Upon a motion from the United States, the Court dismissed King Mountain and Mr. Wheeler from this action for lack of jurisdiction. ECF No. 83. However, the Court held that it has jurisdiction to hear claims brought by the Yakama Nation. ECF No. 83. The Court further ruled that Yakama Nation may press claims on behalf of King Mountain and Delbert Wheeler, because the Yakama Nation's interests as a sovereign are implicated by the imposition of taxes upon its enrolled members. ECF No. 83 at 9-10.

Yakama Nation previously filed a motion for partial summary judgment, ECF No. 52. In ruling on that motion, the Court held that: 1) King Mountain was not exempt from taxation under the General Allotment Act for manufacturing cigarettes and roll-your-own tobacco; and 2) Article II of the 1855 Yakama Treaty did not contain express language exempting the manufacture of tobacco products from federal taxation. ECF No. 103.[1]

---

[1] The United States' current motion touches upon some issues already ruled upon by the Court in denying Yakama Nation's previous motion for partial summary judgment. ECF No. 103. However, the Court recognizes that in the instant

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 4

The United States now seeks summary judgment, contending that as a matter of law that it is entitled to dismissal of all claims pressed by the remaining plaintiff, Yakama Nation.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

motion, the United States bears the burden of establishing that it is entitled to summary judgment under Federal Rule of Civil Procedure 56.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 5

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**DISCUSSION**

As citizens of the United States, enrolled members of federally recognized Indian tribes are generally liable to pay federal taxes. *See Squire v. Capoeman*, 351 U.S. 1, 6 (1956). Federal law imposes an excise tax on the manufacturing of tobacco products to be calculated against the manufacturer at the time of the removal of the tobacco products from the manufacturer's facilities. 26 U.S.C. §§ 5701-5703. Yakama Nation contends that their tobacco products are exempt from excise taxes under the General Allotment Act, Articles II and III of the 1855

Yakama Treaty, and Section 4225 of the Internal Revenue Code pertaining to Indian handicrafts.[2] Each of these issues is examined in turn.

**General Allotment Act**

Under the General Allotment Act, individual Indians were allotted lands to be held in trust by the United States for the benefit of that individual Indian. *Capoeman*, 351 U.S. at 3. After twenty five years, absent extension of the trust period by the President, the land would be conveyed in fee simple to the allottee. *Id.* Part of the Act states:

> [T]he Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter *all restrictions as to sale, incumbrance, or taxation of said land shall be removed* and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent . . . .

25 U.S.C. § 349 (emphasis added).

In *Capoeman*, the Supreme Court held that the language "all restrictions as to . . . taxation of said land shall be removed," implied that trust land that was not

---

[2] Yakama Nation also claimed in its First Amended Complaint that it is entitled to a face-to-face meeting with the President of the United States to resolve any disputes under the 1855 Yakama Treaty. ECF No. 16 at 52-53. However, Yakama Nation represented at oral argument that a meeting has since occurred between the president and a member of the Yakama Nation's leadership. This claim is therefore moot.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 7

yet patented in fee was not subject to taxation. 351 U.S. at 8-10. The Supreme Court noted, however, that the restriction on taxation was limited to "the trust and income derived directly therefrom." *Id.* at 9. Income that was not derived directly from trust land but was derived from earlier income from the land, also known as "reinvestment income," was not exempt from taxation. *Id.* (discussing F. Cohen, Handbook of Federal Indian Law 265-66 (1942)). In *Capoeman*, the taxes at issue were capital gains assessed as income tax on the sale of timber. *Id.* at 4. The Court held that the income resulting from the sale of the timber was derived directly from the trust land and, therefore, not subject to federal income tax. *Id.* at 9-10.

Cases decided after *Capoeman* have identified sources of income beyond timber that are derived directly from the land and are not subject to income tax. *E.g.*, *Stevens v. Commissioner*, 452 F.2d 741, 747 (9th Cir. 1971) (holding that income derived from ranching and farming operations by an allottee on his allotted land are not taxable); *United States v. Daney*, 370 F.2d 791 (10th Cir. 1996) (holding that bonuses paid to allottee for oil and gas leases to his allotment were not taxable). However, other cases have found that some income-producing activities, despite being sited on allotted or tribal trust land, are subject to federal income taxes. *E.g.*, *Dillon v. United States*, 792 F.2d 849, 856 (9th Cir. 1986) (holding that income from a smoke shop operated on trust land was not "generated

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 8

principally from the use of reservation land and resources"); *Critzer v. United States*, 597 F.2d 708, 713-14 (Ct. Cl. 1979) (holding that income generated from a motel, a restaurant, a gift shop, and from building rentals, is not derived directly from the land).

This case concerns tobacco products that King Mountain manufactures from a blend of tobacco, some of which was grown on trust land and some of which was grown elsewhere on non-trust land. The unprocessed tobacco grown on trust land is analogous to the timber grown on trust land in *Capoeman*, and any income from the unprocessed tobacco could be deemed as derived directly from the land. *See* 351 U.S. at 8-10.

In this case the United States is not seeking to impose a tax on the income from unprocessed tobacco grown on trust land. The excise tax at issue is assessed on manufactured tobacco products, including cigarettes and roll-your-own tobacco. The manufacturing process is a combination of labor and capital investment, rather than a product derived directly from the land. *See id.*; *Critzer*, 597 F.2d at 713. Manufacturing tobacco products from unprocessed tobacco grown on trust land is analogous to "income derived from investment of surplus income from the land." *See Capoeman*, 351 U.S. at 9. The excise tax at issue is triggered by the manufacturing process, which is more akin to reinvestment income that is not exempt from taxation. *See Dillon*, 792 F.2d at 855-56.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 9

The Court's decision is consistent with the purposes of the allotment system as expressed in *Capoeman*. In *Capoeman*, the Court recognized that the purpose of the allotment system "was to protect the Indians' interest and to prepare the Indians to take their place as independent qualified members of the modern body politic." *Id.* As such, the Court recognized that it is necessary to preserve from taxation all income derived directly from the allotment land, but it is not necessary to preserve reinvestment income. *Id.*

Yakama Nation's right to grow tobacco on its land free from taxation is not at issue in this case. The purposes underlying the allotment system are not undermined when an excise tax is imposed on manufactured tobacco products created by reinvesting unprocessed tobacco into manufactured tobacco products.

In its previous order, the Court referred to the portion of trust land tobacco used to manufacture King Mountain's finished tobacco products to illustrate the limited connection between the unprocessed tobacco that is derived directly from the land and the finished tobacco products. The proportion of trust land grown tobacco used in the finished tobacco products is not determinative. Whether the tobacco used to manufacture the tobacco products is constituted of fifty-five percent trust land grown tobacco or twenty percent trust land grown tobacco does not change the Court's analysis or conclusions. The excise tax at issue is on the manufactured product, not on the tobacco grown on trust land.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 10

Yakama Nation also contends that King Mountain should be entitled to an allocated tax exemption for that portion of its finished tobacco products that were made using tobacco grown on Yakama trust land. The Court rejects Yakama Nation's theory of allocation for the same reasons that it rejects Yakama Nation's argument under *Capoeman*.[3] The United States is imposing an excise tax on the manufactured tobacco products. The excise tax is not imposed on the unprocessed tobacco, some portion of which may be derived directly from the land. Applying a theory of allocation in this case tied to a proportion of the materials that are derived directly from the land would result in an impermissible broadening of the *Capoeman* rule. *See Dillon*, 792 F.2d at 857.

Additionally, the Court notes an alternative basis for granting summary judgment on the Yakama Nation's claim under the General Allotment Act. The Ninth Circuit consistently has held that the tax exemption under *Capoeman* for income derived directly from trust land applies only to income derived from the allottee's own allotment. *United States v. Anderson*, 625 F.2d 910, 914 (9th Cir. 1980). For example, if an allottee earns income from cattle that graze on different allottees' trust land, such income would not be excludable from income tax. *Id.* at 912. The *Anderson* court noted that "*Capoeman*'s point was that if an Indian's

---

[3] The Court notes that Yakama Nation did not cite to a single case where a court applied an allocation theory to the *Capoeman* line of cases.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 11

1  allotted land (or the income directly derived from it) was taxed, and the tax was not
2  paid, the resulting tax lien on the land would make it impossible for him to receive
3  the land free of 'incumbrance' at the end of the trust period." *Id.* at 914.  In
4  contrast, an allottee's failure to pay taxes would not give rise to a tax lien on a
5  different beneficiary's land. *Id.* (quoting *Holt v. Commissioner*, 364 F.2d 38, 41
6  (8th Cir. 1966)).

7  In this case, Mr. Wheeler is the allottee, but King Mountain is the tax payer.
8  The tax lien statute applies to the property of the "person liable to pay" the unpaid
9  tax.  26 U.S.C. § 6321.  Although the Court is aware that Mr. Wheeler's assets
10 could be subject to a tax lien if King Mountain was found to be Mr. Wheeler's alter
11 ego, *see G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977), the
12 record is devoid of any evidence that King Mountain is Mr. Wheeler's alter ego.
13 Accordingly, any failure by King Mountain to pay tax would presumably result in
14 a tax lien on any assets owned by King Mountain.  As the trust property is held for
15 the benefit of Mr. Wheeler, it is not King Mountain's asset, and presumably the
16 property would not be subject to a tax lien.  Therefore, under the reasoning of
17 *Anderson*, the *Capoeman* exemption would not apply to taxes owed by King
18 Mountain.

19 Therefore, the Court finds that there is no tax exemption under the General
20 Allotment Act for the manufactured tobacco products.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY
JUDGMENT ~ 12

**Article II of the 1855 Yakama Treaty**

The United States contends that King Mountain is not exempt from taxation for cigarettes and roll-your-own tobacco under Article II of the 1855 Yakama Treaty. Article II of the Treaty describes the land that was reserved to the Yakama Nation and states that the "tract shall be set apart and, so far as necessary, surveyed and marked out, *for the exclusive use and benefit* of said confederated tribes and bands of Indians . . . ." *Id.* (emphasis added). The Yakama Nation argues that the language "for exclusive use and benefit" evidences an intent by the United States to exclude certain activities, such as the manufacturing of tobacco products, from federal taxation.

As an initial matter, the parties dispute whether the Court is limited to the four corners of the Treaty when determining whether the treaty creates a tax exemption, or if the Court may also consider extrinsic information such as information about the parties' intent during treaty negotiations.

The Ninth Circuit addressed the scope of this inquiry in *Ramsey v. United States*, 302 F.3d 1074 (2002). Kip Ramsey was an enrolled member of the Yakama Nation. *Id.* at 1076. Mr. Ramsey owned a logging company and used diesel trucks exceeding 55,000 pounds of gross weight to haul his lumber. *Id.* Federal law imposed a tax on trucks that exceeded 55,000 pounds. *Id.* (citing 26

U.S.C. § 4481).  Mr. Ramsey argued that the truck taxes were preempted by Article III of the Treaty.  *Id.*  Article III of the Treaty reads in pertinent part:

> [I]f necessary for the public convenience, roads may be run through the said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right, in common with citizens of the United States, to travel upon all public highways.

*Ramsey*, 302 F.3d at 1076-77 (quoting 12 Stat. at 951-53).

Mr. Ramsey asserted that this language precluded the taxation of enrolled members of the Yakama Nation for using public highways.  *Id.* at 1077.  As part of his argument, Mr. Ramsey relied on the fact that the Ninth Circuit had held that the Treaty preempted Washington law that taxed heavy vehicles.  *Cree v. Flores*, 157 F.3d 762, 771 (9th Cir. 1998).  Mr. Ramsey asserted that the holding regarding Washington law applied equally to federal law.  *Ramsey*, 302 F.3d at 1077.

The Ninth Circuit declined to extend its holding in *Cree* to preempt federal taxation.  The Court drew a distinction between the appropriate canons of construction that applied to preemption of state law with those that applied to federal law.  *Id.* at 1078.  When state tax law is at issue, "a court determines if there is an express federal law prohibiting the tax."  *Id.* at 1079.  Any federal law arguably prohibiting the state tax "must be interpreted in the light most favorable to the Indians, and extrinsic evidence may be used to show the federal government's and Indians' intent."  *Id.*  However, where federal tax law is at issue,

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 14

a court must first determine whether the treaty or statute contains "express exemptive language." *Id.* at 1078. Only if the treaty or statute contains express exemptive language does the court proceed to determine whether that language could be reasonably construed to support exemption from taxation. *Id.* at 1079.

Because this case concerns federal tax law, the question before this Court is whether Article II contains express exemptive language.[4] In making this inquiry, the Court will not consider evidence extrinsic to the Treaty itself. *See id.* at 1078-79.

The Ninth Circuit construed Article II's "exclusive use and benefit" language in *Hoptowit v. Commissioner*, 709 F.2d 564 (9th Cir. 1983). In *Hoptowit*, an enrolled member of the Yakama Nation sought exemptions from federal income tax for income derived from a smoke shop operated on land within the Yakama Nation reservation and for per diem payments received for his work on the

---

[4] Yakama Nation takes issue with the "express exemptive language" test and notes that the Third and Eighth Circuits apply a more permissive standard in examining exemptions from federal taxes flowing from Indian treaties. In those circuits, a treaty may be liberally construed to favor the Indians where it "contains language which can *reasonably be construed* to confer [tax] exemptions." *Lazore v. Commissioner*, 11 F.3d 1180, 1185 (3d Cir. 1993); *Holt v. Commissioner*, 364 F.2d 38, 40 (8th Cir. 1966) (emphasis added). However, this Court is bound to follow Ninth Circuit precedent on the matter.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 15

Case 2:11-cv-03038-RMP    Document 149    Filed 01/24/14

1  Yakama Nation Tribal Council. *Id.* at 565. He asserted that Article II's "exclusive

2  use and benefit" language was the source of the exemption. *Id.* at 565-66.

3        With regard to the per diem payments, the court noted that it previously had

4  ruled that such payments were not exempt from income tax under the reasoning of

5  *Capoeman*. *Id.* at 566 (citing *Comm'r v. Walker*, 326 F.2d 261 (9th Cir. 1964)). In

6  reviewing the language of Article II, the court noted that language "gives to the

7  Tribe the exclusive use and benefit *of the land* on which the reservation is located."

8  *Id.* The court concluded that "any tax exemption created by this language is

9  limited to the income derived directly from the land." *Id.* In short, because the per

10 diem payments were not exempt under the reasoning of *Capoeman*, they were

11 similarly not exempt under any exception contained in Article II. If the income at

12 issue is not derived directly from the land for the purposes of *Capoeman*, then it

13 does not arise from the "use and benefit of the land" for the purposes of Article II.

14 *See id.*

15       This Court has found that there is no exemption from the federal excise tax

16 on manufactured tobacco products under *Capoeman* because the manufactured

17 tobacco products are not derived directly from the land. Under the reasoning of

18 *Hoptowit*, the manufactured tobacco products are not exempt from taxation under

19 Article II of the Yakama Treaty because the excise tax is on the manufacturing of

20 the tobacco products and not on the "use and benefit of the land." *See id.*

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY
JUDGMENT ~ 16

**Article III of the 1855 Yakama Treaty**

Yakama Nation argues that, in addition to Article II of the 1855 Yakama Treaty, Article III of the Treaty prohibits application of the excise tax on King Mountain's tobacco products. The United States contends that Yakama Nation's reliance on Article III is precluded by the Ninth Circuit's decision in *Ramsey*, 302 F.3d 1074.

In *Ramsey*, the Ninth Circuit examined the following language in Article III of the Treaty:

> [I]f necessary for the public convenience, roads may be run throughout the said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right in common with citizens of the United States, to travel upon all public highways.

*Ramsey*, 302 F.3d at 1076-77 (quoting 12 Stat. at 951-53). The plaintiff in *Ramsey*, a member of the Yakama Indian Tribe, contended that this language exempted him from a heavy vehicle tax and diesel fuel tax assessed by the Internal Revenue Service when Ramsey hauled lumber to off-reservation markets. *Id.* at 1076.

The Ninth Circuit rejected Ramsey's argument, finding that Article III contained no express exemptive language under the standard for exemption from federal taxation. *Id.* at 1080. The court noted that the only exemptive language in the Treaty "is the 'free access' language," which did not modify the Yakama's

1   right under the Treaty to travel upon the "public highways" any differently from

2   other "citizens of the United States."  *Id.*  Therefore, Ramsey was subject to

3   taxation on public highways to the same extent as non-Yakama peoples.  *Id.*

4       In this case, the Court similarly holds that the "free access" language is not

5   express exemptive language applicable to King Mountain's manufactured tobacco

6   products.  Article III provides "free access" on roads running throughout the

7   reservation to the public highways.  King Mountain is not being taxed for using on-

8   reservation roads.  It is being taxed for manufacturing tobacco products.

9   Therefore, the only exemptive language in Article III, the "free access" language as

10  recognized in *Ramsey*, does not apply to this case.

11      Yakama Nation's arguments to the contrary are not persuasive.  Yakama

12  Nation argues that *Ramsey* is distinguishable because it involved only a tax on off-

13  reservation activities and not a tax on reservation-produced goods or activities.  In

14  support of this argument, Yakama Nation cites to *United States v. Smiskin*, 487

15  F.3d 1260, 1266-68 (9th Cir. 2007), where the Ninth Circuit relied on the tribe's

16  understanding of the Treaty at the time that the treaty was drafted to hold that

17  application of a state pre-notification requirement to Yakama tribe members

18  violated Article III of the Yakama Treaty.  However, *Smiksin* involved a state tax

19  provision rather than a federal tax.

20

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY
JUDGMENT ~ 18

Within the context of federal taxation, express exemptive language must exist in the Treaty before the Court may examine extrinsic evidence, such as how the Yakama tribe members would have understood the Treaty at the time that it was ratified. *See Ramsey*, 302 F.3d at 1078-79. Because no express exemptive language can be found in Article III applying to the manufacture of tobacco products, the United States is entitled to summary judgment on this claim.

**Section 4225 of the Internal Revenue Code**

Yakama Nation claims that King Mountain's tobacco products are exempt from taxation under Section 4225 of the Internal Revenue Code, entitled "Exemption of articles manufactured or produced by Indians." Section 4225 provides that "[n]o tax shall be imposed *under this chapter* on any article of native Indian handicraft manufactured or produced by Indians on Indian reservations." (Emphasis added.)

Section 4225 is located within Chapter 32 of the Internal Revenue Code. Chapter 32 of the Code contains certain manufacturer excise taxes, including taxes on fishing rods, fishing poles, and bows and arrows. *See, e.g.*, 26 U.S.C. § 4161. Notably, the tobacco excise tax at issue in this case, 26 U.S.C. §5701, is not located within Chapter 32 but rather is found in Chapter 52 of the Code. Thus, Section 4225, on its face, does not apply to the tobacco excise tax.

ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT ~ 19

# CONCLUSION

The Court finds no exemption from federal excise taxes on manufactured tobacco products under the General Allotment Act because the finished tobacco products are not derived directly from the land. The Court finds no exemption under either Article II or III of the Yakama Treaty of 1855 because neither Article contains express exemptive language applicable to the manufacture of tobacco products. Finally, the Court finds no exemption under Section 4225 of the Internal Revenue Code because the exemption for Indian handicrafts on its face does not apply to excise taxes for the manufacture of tobacco products. Therefore, the United States is entitled to summary judgment on all claims.

Accordingly, **IT IS HEREBY ORDERED** that the United States' Motion for Summary Judgment, **ECF No. 134**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order, enter Judgment accordingly, provide copies to counsel, and to close this case.

**DATED** this 24th day of January 2014.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Chief United States District Court Judge